UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Austin J. Webster,

Plaintiff,

v.

St. Louis County, and
Tamara S. Lemke, *Program Facilitator*, *in her individual and official capacities*,

Defendants.

File No. 23-cv-480 (ECT/LIB)

**OPINION AND ORDER**

---

Zorislav R. Leyderman, Law Office of Zorislav R. Leyderman, Minneapolis, MN, for Plaintiff Austin J. Webster.

Nick D. Campanario, St. Louis County Attorney's Office, Duluth, MN, for Defendants St. Louis County and Tamara S. Lemke.

---

While detained in the St. Louis County Jail awaiting trial, Plaintiff Austin J. Webster was struck in the face by a volleyball thrown by Defendant Tamara S. Lemke, a jail employee. In this case, Mr. Webster has sued Ms. Lemke under § 1983, claiming that the incident amounted to excessive force under the Fourteenth Amendment's Due Process Clause. Mr. Webster also has asserted a battery claim under Minnesota common law against Ms. Lemke and St. Louis County.

Ms. Lemke seeks dismissal of Mr. Webster's § 1983 claim under Rule 12(b)(6). She argues that qualified immunity bars Mr. Webster's excessive-force claim. The motion will be granted. There was no constitutional violation because Ms. Lemke's use of force was *de minimis*. If that weren't so, the constitutional right at issue was not clearly

established when the incident occurred. Mr. Webster's § 1983 claim will be dismissed with prejudice. The better decision is not to exercise supplemental jurisdiction over the battery claim, so it will be dismissed without prejudice, leaving Mr. Webster free to pursue that claim in Minnesota state court.

I[1]

On March 5, 2021, Mr. Webster was detained in the St. Louis County Jail. Am. Compl. [ECF No. 10] ¶ 8. Though the Amended Complaint does not allege Mr. Webster's detention status, the parties stipulated at the hearing that Mr. Webster was a pretrial detainee, and publicly available records of the Minnesota Judicial Branch seem to confirm this fact. *See State v. Webster*, No. 69DU-CR-20-3321 (Sixth Judicial Dist. St. Louis Cnty., Minn.). The Jail employed Ms. Lemke as a program facilitator. Am. Compl. ¶ 9.

That day (March 5), Mr. Webster and other detainees were in the Jail's recreation room preparing to play volleyball. *Id.* ¶ 10. Ms. Lemke was in the recreation room too. *Id.* She was explaining the game's rules while holding a volleyball. *Id.* As Ms. Lemke was explaining the rules, Mr. Webster was speaking with another detainee, Andrew Pogorelc. *Id.* Without warning, Ms. Lemke yelled at Mr. Webster to "shut up!" *Id.* ¶ 11.

---

1 In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the Amended Complaint, *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014), from a factual agreement the parties confirmed at the hearing on this motion, and from public records embraced the Amended Complaint, *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). Public records embraced by the Amended Complaint here include records of state-court proceedings. *C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 764 (8th Cir. 2012).

And she threw the volleyball at him. *Id.* The volleyball hit Mr. Webster in the face. *Id.* Other detainees laughed at Mr. Webster. *Id.* ¶ 12.

Some thirty minutes later, Ms. Lemke apologized to Mr. Webster. *Id.* ¶ 14. She also apologized to the other detainees who witnessed the incident, explaining that she had been "a bad role model." *Id.* As a result of being struck by the thrown volleyball, Mr. Webster suffered bruising on his face below his eye, and he received an over-the-counter pain medication from the Jail nurse. *Id.* ¶ 20.[2]

Mr. Webster filed this case not quite two years after the incident, on February 28, 2023. ECF No. 1. Mr. Webster's Amended Complaint includes two counts. The first count is a claim against Ms. Lemke under 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth, Eighth, "and/or" Fourteenth Amendments, Am. Compl. ¶¶ 22–25. For this motion's purposes, Mr. Webster briefed his § 1983 claim as one arising under the Fourteenth Amendment's Due Process Clause. *See* Pl.'s Mem. in Opp'n [ECF No. 18] at 7. Mr. Webster also has confirmed that this claim is asserted against Ms. Lemke in just her individual capacity. Defs.' Mem. in Supp. [ECF No. 15] at 1 n.1; *see generally* Pl.'s

---

[2] The Amended Complaint includes allegations regarding several events following the volleyball incident, but these allegations do not seem relevant to Mr. Webster's claims or the motion to dismiss. Specifically, Mr. Webster alleges that he filed a grievance requesting video of the incident and assistance with filing a police report. Am. Compl. ¶ 15. He alleges that Ms. Lemke filed a report in which she mischaracterized the incident as "an accident." *Id.* And Mr. Webster alleges that Jail administrators did not respond appropriately to his requests that the incident be investigated. *Id.* ¶ 16. A careful reading of Mr. Webster's Amended Complaint shows, however, that he does not ground his § 1983 claim on any of these allegations. This case arises from the volleyball incident, nothing more. *See id.* ¶¶ 22–29 (grounding Mr. Webster's claims on just the volleyball incident).

Mem. in Opp'n. The Amended Complaint's second count is a claim for battery under Minnesota common law against Ms. Lemke and St. Louis County. *Id.* ¶¶ 26–29.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A government official is entitled to qualified immunity unless her "conduct violated a clearly established constitutional or statutory right of which a reasonable [official] would have known." *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018) (citation omitted). "To overcome qualified immunity, the plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) (cleaned up). "The Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc) (citation omitted), *cert. denied*,

141 S. Ct. 1071 (2021). At the Rule 12(b)(6) stage, a federal court asks whether the defendant has shown that she is "entitled to qualified immunity on the face of the complaint." *Baude v. Leyshock*, 23 F.4th 1065, 1071 (8th Cir. 2022) (quoting *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018)).

A

Begin with whether the Amended Complaint alleges facts plausibly showing that Ms. Lemke violated a constitutional right. Though the Supreme Court has not answered "whether the Fourth of Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee[,]" *Lombardo v. City of St. Louis*, 594 U.S. ---, 141 S. Ct. 2239, 2241 n.2 (2021), it is not necessary to address that question here. As noted, Mr. Webster effectively clarified in his opposition brief that he brings his § 1983 excessive-force claim under the Fourteenth Amendment, Pl.'s Mem. in Opp'n at 7, and the Supreme Court has said at least that a pre-trial detainee's excessive-force claim appropriately may be assessed under the Fourteenth Amendment's Due Process clause, *Kingsley v. Hendrickson*, 576 U.S. 389, 391, 397–98 (2015).

The general rule is "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. The force must be more than *de minimis*, *Jackson v. Buckman*, 756 F.3d 1060, 1067–68 (8th Cir. 2014) (citing *Bell v. Wolfish,* 441 U.S. 520, 539 n.21 (1979)), or must be "repugnant to the conscience of mankind[,]" *see Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) (quotations

omitted).[3] These concepts escape precise definition. The leading legal dictionary defines *de minimis* as "[t]rifling" or "negligible." Black's Law Dictionary 544 (11th ed. 2019).[4] The Second Circuit has explained that "[a]ctions are repugnant to the conscience of mankind if they are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'" *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (*Hudson*, 503 U.S. at 10).

The Eighth Circuit has twice found, in the context of Eighth Amendment excessive-force claims, that a prison official's act of throwing an object at an inmate amounted to *de minimis* force. In *Samuels v. Hawkins*, the plaintiff, who "was serving a life sentence for first-degree murder and armed criminal action," threw a cup of liquid on a prison officer. 157 F.3d 557, 558 (8th Cir. 1998). The officer claimed the liquid was urine. *Id.* The plaintiff was placed in restraints. *Id.* While the plaintiff was restrained, the officer returned the favor; she approached plaintiff's cell and threw a cup of liquid (which she claimed was

---

[3] It is true that *Hudson* addressed an excessive-force claim under the Eighth Amendment, but its "repugnant to the conscience of mankind" rule has been widely understood also to govern pretrial detainees' excessive-force claims under the Fourteenth Amendment. *See Jackson*, 756 F.3d at 1068; *see also Edrei v. Maguire*, 892 F.3d 525, 542 n.5 (2d Cir. 2018) (noting, in a Fourteenth Amendment excessive-force case, that the Supreme Court "cross-pollinate[s] between Fourth, Eighth, and Fourteenth Amendment contexts"); *Fuller v. Hafoka*, No. 19-cv-0886 (PJS/BRT), 2021 WL 3036907, at *14–15 (D. Minn. July 19, 2021) (applying Fourth and Eighth Amendment cases to a pretrial detainee's Fourteenth Amendment excessive-force claim).

[4] Force does not cease to be *de minimis* for purposes of the Fourteenth Amendment because it is actionable under state law. "Even though such a trivial use of force may be cognizable under state tort law, 'the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Jackson*, 756 F.3d at 1068 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 848 (1998)).

water) into the cell. *Id.* The plaintiff alleged "that some of the liquid splashed into his eyes and caused damage." *Id.* No evidence of damage was discovered, and "there [was] no evidence the substance [thrown by the officer] was anything but water." *Id.* A panel majority determined that the officer's use of force was *de minimis* and "not of a sort repugnant to the conscience of mankind." *Id.* (quotations omitted). The court categorized the officer's actions as "unprofessional and inappropriate." *Id.* Regardless, the court remarked, "to say that throwing a cup of water . . . at plaintiff was, in the circumstances of this case, malicious and sadistic would be an Orwellian distortion of the meaning of those terms." *Id.*

In *White v. Holmes*, the plaintiff (White) was an inmate at the Missouri State Penitentiary. 21 F.3d 277, 278–79 (8th Cir. 1994). White "was sitting by the door waiting for the library to open." *Id.* at 279. The prison librarian, upset over her inability to open the library door, threw her keys at White, striking his midsection. *Id.* The librarian then "put her hands on White's face, began flailing her arms at his head, and yelled at him to open the door." *Id.* Though White claimed originally that the librarian's actions caused him to suffer a slashed ear and punctured eardrum, *id.*, by the time the case reached the Eighth Circuit, White had "concede[d] there [was] no evidence his ear problems [were] caused by" the librarian's actions, *id.* at 281. Based at least on the absence of injury, the court held that the librarian's use of force was *de minimis* and "not of the repugnant or 'diabolic or inhuman' nature" as the Supreme Court understands those terms. *Id.*

Other courts have reached similar conclusions in excessive-forces cases involving thrown objects. Three cases provide examples. (1) In *Hale v. McLean*, the plaintiff, a

Texas prisoner, claimed that a prison officer violated the Eighth Amendment when he threw a "johnny sack" at the plaintiff, striking him in the testicles. 250 Fed. App'x 89, 90 (5th Cir. 2007).[5] The Fifth Circuit described the officer's actions as "arguably inappropriate and possibly even negligent," but nonetheless held that the officer's actions did not amount to "the type of force that is repugnant to the conscience of mankind." 250 Fed. App'x at 90 (quotation omitted). Though the court did not say so explicitly, it seems reasonable to infer from the Fifth Circuit's reasoning that the court also found the officer's force to be *de minimis*. *See id.* (2) In *Calabria v. Dubois*, the First Circuit addressed an excessive force claim brought by an inmate who claimed to have been injured when an officer "threw a radio belt at [the inmate], causing blood to appear at the corner of his mouth." 23 F.3d 394, *1 (1st Cir. May 24, 2994) (unpublished disposition). In affirming the dismissal of the plaintiff's complaint, the court explained: "The conduct presented here—a single blow caused by a thrown object and resulting only in a bloody lip—was clearly *de minimis* for Eighth Amendment purposes[.]" *Id.* at *2. (3) And more recently in *Baltas v. Dones*, the United States District Court for the District of Connecticut rejected an excessive-force claim based on a prison official's actions in throwing objects at the plaintiff, "such as soap, toilet paper and trash." No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *11 (D. Conn. Apr. 27, 2022). The court explained that "such allegations only

---

[5] The court did not say what a "johnny sack" is, but it appears to be shorthand in the Texas prison system for a sack of food intended to replace a regular cafeteria meal. *See Coronavirus has made Texas prison food even more gross*, The Marshall Project https://www.themarshallproject.org/2020/05/11/ewwwww-what-is-that (last visited Dec. 8, 2023).

raise an inference that [the officer] subjected [the plaintiff] to a *de minimis* use of force that may be objectionable but is not repugnant to the conscience of mankind." *Id.* (quotation omitted).

For several reasons, the better conclusion is that the allegations in Mr. Webster's Amended Complaint do not plausibly show either that Ms. Lemke's use of force went beyond *de minimis* or that her actions were repugnant to the conscience, meaning the allegations do not plausibly show a Fourteenth Amendment violation. (1) A thrown volleyball does not ordinarily carry substantial force. The object itself lacks significant bulk and density. It is true that a skilled player would be capable of propelling a volleyball at considerable speed. But the Amended Complaint gives no hint that Ms. Lemke either had the ability to throw a volleyball at a high speed or that she managed to do that when she threw the ball at Mr. Webster. (2) Viewed against the Amended Complaint's allegations, the volleyball incident is comparable to the facts of those cases just described holding that a variety of thrown objects—water, keys, a johnny sack, a radio belt, soap, toilet paper, and trash—did not involve more than *de minimis* force. In other words, the Amended Complaint gives no plausible reason to reach a different conclusion regarding the volleyball incident at issue here. (3) Mr. Webster alleges that he suffered a minor injury—bruising below his eye—for which he received an over-the-counter pain medication. Am. Compl. ¶ 20. This is not to suggest that Mr. Webster must allege the presence of a significant injury to state his claim. He does not need to do that. *Hudson*, 503 U.S. at 5–7. The point is that the minor injury Mr. Webster alleges he suffered does not plausibly show that Ms. Lemke's use of force went beyond *de minimis*. (4) Ms.

Lemke's action may reasonably be characterized as unprofessional and ill-considered. But neither the Amended Complaint's allegations nor any cited authority plausibly justify a finding that her conduct was "repugnant to the conscience of mankind" in the sense the Supreme Court has used the phrase. Together, these considerations justify the dismissal of Mr. Webster's § 1983 claim.

B

If Mr. Webster alleged facts plausibly showing a Fourteenth Amendment violation, the right he alleges was not clearly established in the relevant sense. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). While Supreme Court "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). The Supreme Court has cautioned that specificity "is particularly important in excessive force cases." *City of Escondido v. Emmons*, 586 U.S. ---, 139 S. Ct. 500, 503 (2019). As the Eighth Circuit has explained, a plaintiff can show that a right was clearly established in different ways:

> [1] A plaintiff may point to existing circuit precedent that involves sufficiently "similar facts" to "squarely govern[ ]" the officer's actions such that the officer had "notice that [his]

> specific use of force [was] unlawful," *Kisela v. Hughes*, 584 U.S. ----, 138 S. Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam), [2] present "a robust consensus of cases of persuasive authority" doing the same, *see De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017), or [3] demonstrate that a general constitutional rule applied with "obvious clarity" to the facts at issue, *see Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018).

*Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020).

None of these circumstances is present here. Eighth Circuit precedents involving similar facts would not have given Ms. Lemke notice that her use of force was unlawful. As discussed above, in two thrown-object cases—*Samuels* and *White*—the Eighth Circuit reached the opposite conclusion. Mr. Webster has cited no other factually similar Eighth Circuit case. Nor has he cited an Eighth Circuit case that might fairly be understood to reach the opposite conclusion. The same can be said of persuasive authorities addressing like facts. Mr. Webster has not cited, and independent research has not identified, any cases from other federal courts establishing a robust consensus that would have given Ms. Lemke notice that throwing a volleyball or similar object would have amounted to excessive force. Finally, in view of this case's seemingly peculiar facts, it is difficult to understand how a general constitutional rule might apply with obvious clarity to have placed Ms. Lemke on notice that her use of force was excessive.

Mr. Webster tries to establish this last point—*i.e.*, that a general rule applied with obvious clarity to show that Ms. Lemke's use of force was excessive—but the cases Mr. Webster cites to support this argument do not achieve that purpose. Mr. Webster first cites *Kingsley*, arguing that this case "put correctional employees on clear notice that using force on an inmate when no force is permissible violates the Constitution." Pl.'s Mem. in Opp'n

at 11. In *Kingsley*, the Supreme Court held "that a pretrial detainee [claiming excessive force] must show only that the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. at 396–97. The Court identified a non-exhaustive list of considerations that might bear on the reasonableness of the force used, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

Mr. Webster argues that Ms. Lemke was on notice that no force was necessary because the final three of these considerations weigh in his favor. Pl.'s Mem. in Opp'n at 12 (arguing there was no security problem, no threat to Ms. Lemke, and no resistance by Mr. Webster). This is not persuasive. The question is not whether some considerations favor Mr. Webster. It is whether *Kingsley*'s general rule applies with "obvious clarity" to this case. It does not. Start with a fundamental problem: it is questionable whether a non-exhaustive list of considerations is a "rule" in the relevant sense. The list seems more appropriately described as a guide to applying *Kingsley*'s objective standard. Regardless, accepting that *Kingsley*'s list is such a rule, it is not "obvious" what result is produced when the list is applied here. As described in the Amended Complaint, the amount of force Ms. Lemke used was, if not *de minimis*, then quite insubstantial, and Mr. Webster's injury was slight. In other words, some considerations favor Ms. Lemke even if other considerations favor Mr. Webster. That mixed bag does not show "obvious clarity" for qualified

immunity's purposes. And *Kingsley*'s facts do not help. They are quite distinguishable. In *Kingsley*, officers handcuffed a noncompliant pretrial detainee, placed a knee on his back, slammed his head into a concrete bunk, and stunned him with a taser. 576 U.S. at 392–93. In other words, how *Kingsley*'s list of non-exhaustive considerations applies to *Kingsley*'s facts says little about how the list might apply to this case's facts.

Like *Kingsley*, the other cases Mr. Webster cites address materially different facts and are, for that reason, not helpful in identifying whether the particular right claimed here was clearly established. *See Smith v. Conway Cnty.*, 759 F.3d 853, 856–57 (8th Cir. 2014) (involving use of a taser on a bed-ridden pretrial detainee); *Edwards v. Byrd*, 750 F.3d 728, 730–31 (8th Cir. 2014) (involving use of a flash-bang grenade and bean-bag guns on compliant pretrial detainees); *Treats v. Morgan*, 308 F.3d 868, 871 (8th Cir. 2002) (involving use of "a prolonged burst of . . . pepper spray" against an inmate and "slamm[ing]" the inmate to the floor); *Hickley v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) (finding that use of stun gun "was both an exaggerated response to [the inmate's] misconduct and a summary corporal punishment that violated [his] Eighth Amendment right to be free of cruel and unusual punishment"). There is no fair comparison between these cases and Mr. Webster's allegations here.

III

Because there is not complete diversity between Mr. Webster and at least St. Louis County, Am. Compl. ¶¶ 5, 6, there is no basis to exercise subject-matter jurisdiction over Mr. Webster's state-law battery claim under 28 U.S.C. § 1332(a), *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). A district court "may decline to exercise supplemental jurisdiction

over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008).

There is no reason to deviate from this general rule here. This case is in its earliest stages. There has been no pretrial scheduling conference. No scheduling order has been entered. If there have been discovery or other nondispositive disputes between the parties, they have not been addressed while the case has been pending here. Barring an appeal, Mr. Webster may pursue his battery claim in Minnesota state court.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 13] is **GRANTED**.

2. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Count One of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

3. Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state-law claim asserted against Defendants St. Louis County and Tamara S. Lemke in Count Two. Count Two is therefore **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: December 11, 2023

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court